UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

MEGAN MOONEY,

               Plaintiff,

v.

RICHTER & RATNER CONTRACTING CORP., AND MARC HEIMAN,

               Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

Index No.: 1:25-cv-10138

**COMPLAINT**

**JURY TRIAL DEMANDED**

Plaintiff Megan Mooney ("Plaintiff"), on behalf of herself, by and through her attorneys Valli Kane & Vagnini LLP, brings this action for damages and other legal and equitable relief against Defendants Richter & Ratner Contracting Corp. ("Richter & Ratner" or the "Company") and Marc Heiman ("Heiman") (collectively, "Defendants") for violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.*, ("Title VII") the New York State Human Rights Law ("NYSHRL"), NY Exec L § 296 *et seq.*, the New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code § 8-101 *et seq.*, and any other cause(s) of action that can be inferred from the facts set forth herein.

## INTRODUCTION

1. Plaintiff was hired by Richter & Ratner as Director of Growth and Partnerships on March 25, 2024. Throughout her employment, Plaintiff was subjected to a relentless pattern of sexual harassment and gender-based hostility by her direct supervisor, Heiman, the CEO and President of the Company.

2. Heiman repeatedly joked about women "sleeping with clients" to obtain business, commented that a female predecessor "must not have been good in bed" when a business lead proved unproductive, suggested that a male employee should "sleep with" a female contact to

secure work, told Plaintiff she should "take time off to go on dates," and made crude sexual innuendos about female clients.

3.  Additionally, Heiman repeatedly used his size and physical presence as a male to intimidate Plaintiff, further contributing to the hostile work environment she endured.

4.  When Plaintiff reported this unlawful conduct, Heiman subjected her to severe and escalating retaliation, culminating in her unlawful termination on January 15, 2025—two months after Plaintiff filed an EEOC charge and just one day after the parties were notified of their eligibility for EEOC mediation.

5.  Plaintiff is entitled to recover backpay, front pay, any other economic damages, compensatory damages, punitive damages, attorneys' fees, and costs.

## THE PARTIES

6.  Plaintiff is a former employee of Defendants who has been aggrieved by Defendants' actions. She is and has been, at all relevant times, a citizen of the United States of America and a resident of New York County, New York

7.  Defendant Richter & Ratner Contracting Corp. is a construction management company, with its principal place of business located at 45 W 36th Street, 12th Floor, New York, NY 10018. At all relevant times, Richter & Ratner employed at least fifteen employees.

8.  At all relevant times, Defendant Richter & Ratner has been an employer within the meaning of Title VII, the NYSHRL, and the NYCHRL.

9.  Defendant Marc Heiman is an individual who resides in Connecticut. At all relevant times, Heiman was the owner, CEO, and President of Richter & Ratner.

10. At all relevant times, Heiman had the power to hire Plaintiff, fire Plaintiff, set Plaintiff's schedule, and set Plaintiff's rate of pay. Heiman also maintained Plaintiff's employment records and directly supervised her.

11. Heiman made personnel decisions regarding Plaintiff's employment for Defendant Richter & Ratner.

12. Heiman has at all relevant times been an "employer" covered by the NYSHRL and NYCHRL.

13. At all relevant times, Plaintiff was an employee of both Defendants in New York, NY.

## JURISDICTION AND VENUE

14. This Court has jurisdiction over this action under 28 U.S.C. § 1331, which confers original jurisdiction upon this Court for actions arising under the laws of the United States, because this action is brought under Title VII.

15. This Court has supplemental jurisdiction over Plaintiff's non-federal claims under 28 U.S.C. § 1367(a) because the non-federal claims arise from a common nucleus of operative fact with the federal claims, and therefore form part of the same case or controversy under Article III of the United States Constitution.

16. Venue is proper in this Court under 42 U.S.C. § 2000e-5(f)(3) and 29 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this district.

## EXHAUSTION OF FEDERAL ADMINISTRATIVE REMEDIES

17. Plaintiff timely filed a complaint of discrimination with the EEOC on November 15, 2024.

18. Plaintiff received her Notice of Right to Sue Letter from the EEOC for the Title VII claims alleged herein within 90 days of the filing of this complaint.

**STATEMENT OF FACTS**

19. On or about March 25, 2024, Plaintiff began her employment with Richter & Ratner as Director of Growth and Partnerships.

20. Throughout her employment, Heiman subjected Plaintiff to unwelcome gender-based remarks that created a hostile and abusive work environment.

21. On April 5, 2024, shortly after a regional earthquake, Plaintiff greeted Heiman with "good morning/happy earthquake day." Heiman responded: "It's so strange because usually I only make earthquakes happen in bed." This sexually explicit comment made Plaintiff extremely uncomfortable, and she did not respond.

22. On or about April 25, 2024, during a meeting to review sales leads, Heiman repeatedly referenced that Plaintiff's predecessor, Tivona Cunningham, "was sleeping with clients." When discussing a business lead that was unproductive, Heiman commented: "I guess she must not have been good in bed." Plaintiff told Heiman she did not want to hear such comments, but he persisted.

23. On May 9, 2024, after Plaintiff completed a meeting with a potential client, a major international architecture firm, she began debriefing Heiman over the phone. Before she could relay the full extent of the meeting, Heiman became manic and berated her, screaming at the top of his lungs that she "fucking blew it," she was "a piece of garbage," and "it's your job to build me up like a god." In reality, Plaintiff performed very well and held successful follow-up meetings with the potential client in June and September. She could not rationalize his reaction.

24. Heiman also made racist comments to Plaintiff, including on May 14, 2024, when leaving a presentation at Gensler's NYC office, stating he "had a hard time telling people apart because all Asians look alike."

4

25. On July 17, 2024, after Plaintiff attended a commercial real estate networking event for women, she mentioned to Heiman that one of his former employees was there. Heiman responded: "I know, she called me. I can't get her to give us work. I'll have to get Pedro [the firm's Marketing Coordinator] to sleep with her." Plaintiff found this comment disgusting and demeaning.

26. On July 22, 2024, Heiman berated Plaintiff, stating that she is "terrifying" and "scares people." Heiman then stated that Plaintiff should "take time off to go on dates." Plaintiff had never discussed her personal dating life with Heiman or anyone else at the firm, so she was highly offended by this intrusive comment.

27. On August 19, 2024, while Plaintiff and Heiman were reviewing project images in a cubicle, Heiman commented about a high-end residential project: "There was a leak, and we ended up having to pay her $100,000, all because the bitch got wet." Plaintiff was again made to feel uncomfortable with this sexual innuendo. Again, Plaintiff stated that she did not want to hear such comments.

28. On August 26, 2024, during a meeting in Heiman's office, Plaintiff attempted to discuss the firm's bid success ratio over the preceding years. Analyzing these statistics was a vital part of her role as Director of Growth and Partnerships, and she raised the issue in an effort to improve the firm's performance.

29. Heiman began screaming at her, asserting that she was questioning how he ran his business and that she had "done nothing" and "know[s] nothing." Heiman rose from his chair, came around his desk towards her, stood over her, and said, "I'm going to take a piss because that is what I think of this." By invading her physical space and using his size and stature to loom over Plaintiff, who is significantly smaller in comparison, Heiman acted in an overtly gender-based, intimidating, and demeaning manner.

5

30. Later that day, Heiman, who was apparently still upset with the topic of the prior conversation, stormed into Plaintiff's office while she was in a meeting with the door shut, stating, "Do not tell me how to run my business," and "How dare you question me?" He threw a large proposal packet of documents across her desk. Plaintiff repeatedly asked him to stop and take a time out, but Heiman continued his physically aggressive behavior.

31. On the evening of August 26, 2024, Plaintiff memorialized the incidents in an email to Heiman and members of upper management, including Executive Vice President Mark Gaccione, Vice President Richard Coleman, and Karen Kraker (the Company's Controller, who Plaintiff believed served as Human Resources).

32. In her email, Plaintiff described the verbal and physical attacks, explained that she felt physically unsafe, and stated that she did not feel comfortable working alone with Heiman.

33. Plaintiff expressed concern about being reprimanded for her reporting, stated her desire for a healthy, safe, and productive work environment, and expressed openness to meeting to work towards finding a solution.

34. Rather than address Plaintiff's legitimate concerns, Defendants immediately began retaliating against her.

35. On August 28, 2024, two days after Plaintiff's complaint, she returned from lunch to find the Company's IT vendor, Netsurit, actively remotely controlling her computer. A Netsurit representative was logged into Plaintiff's system, copying files from her desktop and her Teams account. Plaintiff called Netsurit, opened an IT ticket, and emailed upper management about the incident.

36. Heiman initially claimed that Plaintiff was being "hacked" and "it could be bots." However, Plaintiff followed up with two separate Netsurit representatives, who both confirmed that the Company submitted a request to lock her out of her account, change her password, and

6

copy all of her desktop files and Teams conversations. This surveillance and copying of Plaintiff's files was a clear retaliatory effort in response to her August 26, 2024, complaint.

37. On August 30, 2024, rather than agree to cease using physical aggression and intimidation toward Plaintiff, Heiman directed that Plaintiff could not work in the office.

38. On September 11, Heiman directed Plaintiff to prepare a comprehensive presentation outlining everything she had worked on since the beginning of her employment. To Plaintiff's knowledge, no other employee was ever subjected to such a requirement. Heiman required that the presentation be delivered to a group of his longtime associates, all male, including Richard Coleman, former Head of Project Management, and Mark Gaccione, Head of Construction Field Operations.

39. On September 19, 2024, Plaintiff requested Company approval to purchase tickets to the Women's Builders Council industry event, where she and a female co-worker had received an award and would be recognized. Heiman denigrated the event, calling it a "magazine solicitation," and ignored the request.

40. When Plaintiff again requested approval on September 23, 2024, Heiman eventually responded but minimized her achievement and accused her of not having asked him, which was untrue.

41. On September 26, 2024, Plaintiff's counsel sent an initial letter to Defendants, which outlined her claims. On September 30, Plaintiff received an email from Lena Alvarez, a representative from Park & Lex, a third-party Human Resources service that Defendants had recently hired.

42. On October 2, 2024, Heiman cancelled the presentation he had assigned to Plaintiff after she requested either early access to the office or a later start time. Heiman had scheduled her to present at 7:30 a.m., even though the office did not open until 7:30 a.m., and he had never before

scheduled her to begin a presentation at that hour. Plaintiff raised concern that the unusual timing of this assignment appeared retaliatory. In response, Heiman replied, "Yes, Meg, this is retaliatory," and then falsely accused her of refusing to perform the presentation.

43. On October 30, 2024, Richter & Ratner posted a job opening on LinkedIn for a "Client Relationship Manager" with job duties very similar to those currently held by Plaintiff, signaling the Company's intent to replace her.

44. On November 15, 2024, Plaintiff filed her initial EEOC Charge of Discrimination.

45. Following the EEOC filing, Heiman's retaliatory conduct escalated dramatically. On November 19, 2024, Heiman sent multiple threatening emails to Plaintiff.

46. In one email, Heiman accused Plaintiff of making false accusations of discrimination and retaliation. He wrote: "You have possibly done irreparable harm to my good name and to the company's financial stability," then ominously stated, "Trust me, this will not go without repercussions, as I take my good name and reputation very seriously. You have been warned."

47. Furthermore, Heiman subjected Plaintiff's work to an excessive and unjustified level of scrutiny that was not applied to other employees.

48. Heiman required only Plaintiff to send a detailed email every Monday outlining all of her planned work for the week. In the four weeks following this assignment, he also required only Plaintiff to submit another report each Wednesday.

49. In response to these reports, Heiman routinely sent harshly critical and demeaning emails, nitpicking her plans and undermining her efforts.

50. Additionally, throughout each week, Heiman heavily monitored only Plaintiff's daily schedule, communications with prospective clients, and other work activities, sending multiple emails criticizing her performance.

8

51. Heiman then mandated that Plaintiff, and not her colleagues, submit a detailed report of her weekly results every Friday, along with a list of her planned next steps.

52. In addition to these Monday, Wednesday, and Friday report-outs, which required Plaintiff to seek and wait for Heiman's permission to proceed with her work, Heiman repeatedly demanded that Plaintiff reiterate and re-explain the same information from her reports. Each reiteration prompted further criticism and reprimand. This excessive and duplicative reporting burden was imposed solely on Plaintiff, on top of her full workload.

53. Heiman sent dozens and dozens of emails containing angry tirades, rife with mistruths, half-truths, and outright lies, all in what appears to be an attempt to "paper" Plaintiff's employment file with negative comments in an obvious attempt to justify a potential termination. Plaintiff, inasmuch as she can, attempted to refute each of Heiman's lies. However, Heiman soon ordered her to stop defending herself against his accusations, warning that any further attempt to refute his baseless claims would be treated as insubordination.

54. Heiman also sent numerous disturbing emails wherein he personally insulted and demeaned Plaintiff. Several of these emails were sent in the middle of the night, including as late as 3:00 a.m. This ongoing, targeted scrutiny hindered Plaintiff's ability to perform her job effectively and was not imposed on other employees.

55. On December 17, 2024, amidst Heiman's barrage of retaliatory criticisms, he accused Plaintiff of defaming him and threatened her with further retaliation via email, stating: "I can assure you that your games of false accusations to your superior and other harsh comments will very soon be coming to an end."

56. On January 14, 2025, the parties were notified of their eligibility for the EEOC mediation program.

57. Just one day later, on January 15, 2025, Heiman abruptly terminated Plaintiff in retaliation for her continued complaints.

58. The stated reason for termination was allegedly "budgetary." However, this reason was pretextual.

59. Soon after Plaintiff's termination, Heiman rehired Plaintiff's predecessor, Tivona Cunningham, despite having previously made multiple derogatory, sex-based comments about her.

60. Additionally, Richter & Ratner continued to make multiple new hires across various departments, including Business Development, which expanded following Plaintiff's termination for "budgetary" reasons.

61. Plaintiff's termination was the culmination of a months-long campaign of retaliation in response to her protected complaints of sexual harassment and discrimination.

## CAUSES OF ACTION

### AS AND FOR A FIRST CAUSE OF ACTION FOR A VIOLATION OF
Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq*.
(Hostile Work Environment)
(*Against Defendant Richter & Ratner*)

62. Plaintiff re-alleges and incorporates by reference all allegations in all preceding paragraphs.

63. The conduct alleged herein violates Title VII, as Defendant subjected Plaintiff to a hostile work environment based on sex.

64. Defendant subjected Plaintiff to severe and pervasive unwelcome conduct of a sexual and gender-based nature. This included: explicit comments about Heiman's own sexual activities; repeated assertions that women "sleep with" clients or others to obtain business; derogatory remarks that women are not "good in bed"; suggestions that Plaintiff should "take time off to go on dates"; routine use of gender-based slurs, including referring to women as "bitches,"

10

"snobby bitches," "fucking bitches," and "sluts"; and sexual innuendo about a female client who "got wet."

65. Heiman repeatedly used his size and physical presence as a male to intimidate Plaintiff, further contributing to the hostile work environment she endured.

66. The sexual harassment was sufficiently severe and pervasive to alter the terms and conditions of Plaintiff's employment and create an abusive working environment. This conduct was unwelcome and offensive to Plaintiff.

67. Defendant Richter & Ratner is strictly liable for the hostile work environment created by Heiman because he was Plaintiff's supervisor and took tangible adverse employment actions against her, including her ultimate termination.

68. The conduct alleged herein constitutes sexual harassment in violation of Title VII.

69. Plaintiff's requests for relief are set forth below.

**AS AND FOR A SECOND CAUSE OF ACTION FOR A VIOLATION OF**
**The New York State Human Rights Law, NY Exec L § 296** *et seq*.
**(Hostile Work Environment)**
(*Against all Defendants*)

70. Plaintiff re-alleges and incorporates by reference all allegations in all preceding paragraphs.

71. The conduct alleged herein violates the NYSHRL, as Defendants subjected Plaintiff to a hostile work environment based on sex.

72. Plaintiff's requests for relief are set forth below.

**AS AND FOR A THIRD CAUSE OF ACTION FOR A VIOLATION OF**
**The New York City Human Rights Law, N.Y.C. Admin. Code § 8-101 *et seq*.**
**(Hostile Work Environment)**
(*Against all Defendants*)

73.   Plaintiff re-alleges and incorporates by reference all allegations in all preceding paragraphs.

74.   The conduct alleged herein violates the NYCHRL, as Defendants subjected Plaintiff to a hostile work environment based on sex.

75.   Plaintiff's requests for relief are set forth below.

**AS AND FOR A FOURTH CAUSE OF ACTION FOR A VIOLATION OF**
**Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e *et seq*.**
**(Disparate Treatment)**
(*Against Defendant Richter & Ratner*)

76.   Plaintiff re-alleges and incorporates by reference all allegations in all preceding paragraphs.

77.   The conduct alleged herein violates Title VII, as Defendant has engaged in the practice of disparate treatment against Plaintiff.

78.   Plaintiff was qualified for his job with Defendant. Plaintiff successfully performed her job responsibilities throughout her tenure.

79.   Defendants subjected Plaintiff to adverse employment actions, including a sexually hostile work environment, disparate terms and conditions of employment, excessive scrutiny and monitoring, pretextual negative performance criticisms, and termination.

80.   Plaintiff's requests for relief are set forth below.

**AS AND FOR A FIFTH CAUSE OF ACTION FOR A VIOLATION OF**
**The New York State Human Rights Law, NY Exec L § 296** *et seq.*
**(Disparate Treatment)**
(*Against all Defendants*)

81. Plaintiff re-alleges and incorporates by reference all allegations in all preceding paragraphs.

82. The conduct alleged herein violates the NYSHRL, as Defendant has engaged in the practice of disparate treatment against Plaintiff.

83. Plaintiff's requests for relief are set forth below.

**AS AND FOR A FIFTH CAUSE OF ACTION FOR A VIOLATION OF**
**The New York City Human Rights Law, N.Y.C. Admin. Code § 8-101** *et seq.*
**(Disparate Treatment)**
(*Against all Defendants*)

84. Plaintiff re-alleges and incorporates by reference all allegations in all preceding paragraphs.

85. The conduct alleged herein violates the NYCHRL, as Defendant has engaged in the practice of disparate treatment against Plaintiff.

86. Plaintiff's requests for relief are set forth below.

**AS AND FOR A SIXTH CAUSE OF ACTION FOR A VIOLATION OF**
**Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-3**
**(Retaliation)**
(*Against Defendant Richter & Ratner*)

87. Plaintiff repeats and re-alleges the allegations contained in the paragraphs above, as if fully set forth herein.

88. Plaintiff engaged in protected activity under Title VII by complaining of Defendants' unlawful conduct to Heiman and Richter & Ratner leadership via email, Defendants' counsel via letter, and the EEOC via a Charge of Discrimination.

89. Defendant retaliated against Plaintiff for engaging in protected activity by subjecting her to increased and unreasonable scrutiny and ultimately terminating her employment.

90. Defendant would not have taken these adverse actions against Plaintiff but for her engagement in protected activity.

91. Plaintiff's requests for relief are set forth below.

### AS AND FOR A SEVENTH CAUSE OF ACTION FOR A VIOLATION OF
**The New York State Human Rights Law §§ 296(7) Against Defendants**
**(Retaliation)**
(*Against all Defendants*)

92. Plaintiff repeats and re-alleges the allegations contained in the paragraphs above, as if fully set forth herein.

93. The conduct alleged herein violates the NYSHRL, as Defendants subjected Plaintiff to retaliation based on her protected activity.

94. Plaintiff's requests for relief are set forth below.

### AS AND FOR AN EIGHTH CAUSE OF ACTION FOR A VIOLATION OF
**The New York City Human Rights Law, N.Y.C. Admin. Code § 8-107(7)**
**(Retaliation)**
(*Against all Defendants*)

95. Plaintiff repeats and re-alleges the allegations contained in the paragraphs above, as if fully set forth herein.

96. The conduct alleged herein violates the NYCHRL, as Defendants subjected Plaintiff to retaliation based on her protected activity.

97. Plaintiff's requests for relief are set forth below.

**PRAYER FOR RELIEF**

**Wherefore**, Plaintiff demands judgment against Defendants as follows:

A.  A judgment declaring that the practices complained of herein are unlawful and in violation of Title VII, the NYSHRL, and the NYCHRL.

B.  All damages which Plaintiff has sustained because of Defendants' conduct, including: (i) backpay, (ii) front pay, (iii) any other economic damages, and (iv) compensatory damages;

C.  Awarding Plaintiff her costs and disbursements incurred in connection with this action, including reasonable attorneys' fees, expert witness fees, and other costs;

D.  Pre- and post- judgment as provided by law; and

E.  Granting Plaintiff other and further relief as this Court finds necessary and proper.

**DEMAND FOR TRIAL BY JURY**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs demand a trial by jury on all questions of fact raised by this complaint.

Dated:   Garden City, New York
         December 5, 2025

                                          Respectfully Submitted

                                          */s/ Robert J. Valli, Jr.*

                                          Robert J. Valli, Jr., Esq.
                                          rvalli@vkv.law
                                          **Valli Kane & Vagnini LLP**
                                          600 Old Country Road, Ste. 519
                                          Garden City, New York 11530
                                          (516) 203-7180 (phone)
                                          (516) 706-0248 (fax)

                                          *Attorneys for Plaintiff*